UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LEAH SIMPSON,                                            Case No. 1:10-cv-610

       Plaintiff,                                        Barrett, J.
                                                         Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Leah Simpson filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled.  *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.  Because significant factual errors exist and the Commissioner's decision is not supported by substantial evidence in the record, I recommend that the decision be REVERSED.

    **I. Summary of Administrative Record**

Plaintiff filed applications for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on July 27, 2006, alleging a disability onset date of February 28, 2004.   Plaintiff's applications were denied initially and upon reconsideration, and she timely requested an evidentiary hearing.  On September 11, 2009, following an administrative hearing held on August 17, 2009 at which Plaintiff appeared with counsel, Administrative Law Judge ("ALJ") James I.K. Knapp issued a decision concluding that Plaintiff was not disabled, because she retained the residual

1

functional capacity ("RFC") to perform a limited range of light work.  Plaintiff was 34 years old at the time of that decision.  The Appeals Council denied review; therefore, the ALJ's decision remains as the final decision of the Commissioner.  Plaintiff filed the instant complaint on September 7, 2010 in order to challenge the ALJ's decision.

In specific "Findings" representing the rationale of his decision, the ALJ determined that Plaintiff "meets the insured status requirements of the Social Security Act through September 30, 2010" and that she has the following severe impairments: "psoriatic arthritis, bilateral knee arthritis, exogenous obesity, recurrent migraine and cluster headaches, bilateral knee arthritis, dysthymia, generalized anxiety disorder, and attention deficit disorder." (Doc. 7-2 at 22).  However, the ALJ determined that none of the impairments or combination thereof met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability.  (*Id.* at 24).  Rather, the ALJ determined that Plaintiff retained the following residual functional capacity to perform a range of light work, subject to the following additional limitations:

> [C]laimant lacks the residual functional capacity to: 1) lift more than ten pounds frequently or twenty pounds occasionally; 2) crawl or climb ladders or scaffolds; 3) do greater than occasional crouching, stooping, kneeling, or stair climbing; 4) work at unprotected heights or around moving machinery; 5) have greater than occasional contact with the public, supervisors, or co-workers; 6) do other than simple, repetitive tasks; or 7) do other than low stress work activity (i.e., no job involving fixed production quotas or that ...otherwise involves above average pressure for production, work that is other than routine in nature, or work that is hazardous).

(Doc. 7-2 at 25).  The ALJ determined that although Plaintiff could not perform any of her past relevant work, she was classified as a younger individual whose age,

2

education, work experience, and residual functional capacity would enable her to perform jobs that existed in significant numbers in the national economy. (*Id.* at 30).

In her statement of errors, Plaintiff argues that the ALJ erred when he: 1) found claimant does not suffer from a severe back condition; 2) failed to give significant weight to the opinion of Plaintiff's treating psychotherapist; and 3) found that her treating psychiatrist specifically ruled out the diagnosis of bi-polar disorder.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve

months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that all three referenced errors led the ALJ to erroneously conclude that Plaintiff was not disabled. Because I find significant errors exist concerning the ALJ's determination of Plaintiff's impairments at Step 2 of the sequential analysis, remand is required.

**B. Specific Errors**

**1. The ALJ's Finding that Plaintiff Has No Back Impairment**

Plaintiff claims disability based in part upon a back impairment that causes severe pain. At the evidentiary hearing, Plaintiff testified that a combination of her psoriatic arthritis and "the degenerative disc disease in my back" were her "primary" physical problems. (Doc. 7-2 at 37). The ALJ acknowledged Plaintiff's complaint of low back pain, including during a hospital emergency room visit in September 2004, but specifically declined to find that Plaintiff's claimed back impairment was "severe." As a basis for that determination, the ALJ stated "[t]here is no x-ray or other study showing any specific low back condition in either the thoracic or dorsolumbar spine in the record." (Doc. 7-2 at 24).

As the Defendant concedes, the ALJ's finding in this regard was clearly erroneous. An x-ray ordered by Plaintiff's primary care physician on 8/24/07 unequivocally demonstrates "[m]oderately severe L4-L6 degenerative disc disease" consistent with Plaintiff's testimony. (Doc. 7-7 at 108; Doc. 7-2 at 37-38). A variety of other medical records also document Plaintiff's complaints of back pain. (*See, e.g.,* Doc. 7-7 at 63, 126, 156, 164).

5

Defendant argues that the ALJ's decision should be affirmed because the x-ray does not definitively show that his "final conclusion" - that any back impairment was not "severe" - was incorrect.  (Doc. 14 at 10).  Defendant finds support for the ALJ's conclusion in the report of a one-time examining consultant, Dr. Glaser.  Dr. Glaser examined Plaintiff on September 28, 2006 - notably, nearly a year prior to the date of the overlooked x-ray.  Based upon the date of his examination alone, Dr. Glaser's one-time report fails to constitute substantial evidence to uphold the ALJ's finding that Plaintiff's back impairment was not severe.  It must be noted, however, that even Dr. Glaser noticed Plaintiff's reduced range of motion in her dorsolumbar spine, and opined that Plaintiff could do only a "mild" amount of lifting, with postural limitations.  (*See* Doc. 7-7 at 65; *see also id.* at 66, noting Plaintiff capable of only "a mild amount" of postural activities; *id.* at 69, noting "difficulty forward bending at the waist").

Defendant alternatively argues that even if the ALJ erred in failing to find a severe low back impairment, any error was harmless because Plaintiff's low back impairment has not been shown to impose any additional limitations in Plaintiff's residual functional capacity.  Again, Defendant's argument fails to persuade.  Plaintiff testified that her back impairment is the "primary" complaint on which her claim of disability was based.  She testified that she had severe postural restrictions, such as being unable to stand for more than approximately 15 minutes at a time and being unable to sit for longer than an hour.  The ALJ's inadvertent failure to acknowledge that significant objective evidence confirms the severity of Plaintiff's back impairment cannot be said to be harmless error.  In any event, this Court's review of the Commissioner's decision is limited to discerning whether there is substantial evidence to support that

6

decision "as expressed" - not whether the Court can find an alternative basis to uphold the non-disability determination. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

**2. The ALJ's Finding that Plaintiff Does Not Have Bipolar Disorder**

Plaintiff also finds fault with the ALJ's conclusion that her treating psychiatrist "ruled out" bipolar disorder as a severe impairment. The ALJ acknowledged some of Plaintiff's multiple mental impairments, including generalized anxiety disorder, dysthymia, and attention deficit disorder. (Doc. 7-2 at 22). However, he determined that Dr. Freeland had "specifically ruled out bipolar [disorder] which contradicts the diagnosis made during her hospitalization at University Hospital in 2004." (Doc. 7-2 at 27). The ALJ referenced the August 2009 records of Plaintiff's therapist, which included diagnoses of "PTSD and Panic Disorder and rule out bipolar disorder," but, as discussed below, found that the therapist's opinion was "not entitled to any significant weight." (*Id.*).

Plaintiff argues that the ALJ's conclusion that she does not suffer from the severe impairment of bipolar disorder is in error, in that Dr. Freeland never actually ruled out that diagnosis, but instead simply noted that it "should be considered, and, if necessary, 'ruled out' in the future." (Doc. 11 at 5). Because other records demonstrate that Plaintiff has been diagnosed with bipolar disorder, Plaintiff argues that the disorder should have been listed as one of her severe impairments, and should have resulted in additional restrictions concerning her ability to work.

Several records reference bipolar disorder, chief among them Plaintiff's hospital records from an admission to University Hospital on October 13, 2004 for psychiatric

7

illness.  Plaintiff spent five days on the psychiatric unit before being discharged against medical advice on October 19, 2004, with instructions to follow-up with outpatient care. Her diagnoses upon discharge included bipolar disorder "most likely representing type 2", attention deficit hyperactivity disorder, and a possibility of ("rule out") posttraumatic stress disorder.  (Doc. 7-7 at 6).  Plaintiff's records reflect a "strong family history of bipolar." (Doc. 7-7 at 7; *see also* Doc. 7-7 at 55, 192).  She remained under the care of a psychiatrist at University Hospital from July 2004 through at least December 2004 for an unspecified "clinically significant mood disorder," presumably the previously diagnosed bipolar disorder. (Doc. 7-7 at 28).   Other records also suggest at least some evidence consistent with bipolar disorder.  (Doc. 7-7 at 88 (prior diagnosis reported); *id.* at 100 (same), *id.* at 120 (noting that Plaintiff chain smokes and does puzzles without eating, bathing or changing clothes "about a week a month"); *id.* at 148 and 157 (sleep disturbance); *id.* at 201 (reported episode where she did not sleep for three days); *see also* Doc. 7-2 at 48-50 (testimony at hearing)).

Plaintiff began treating with Dr. Judith Freeland, a psychiatrist, on October 4, 2007.  As Defendant points out, Dr. Judith Freeland's clinical notes from October 2007 through June 2009 repeatedly include the notation "R/O bipolar." In fact, the exact same notation is written in each Dr. Freeland's notes next to the letter "A" (presumably a reference to "Axis" or the DSM-IV diagnostic manual).  (*See e.g.*, Doc. 7-7 at 174, 176, 178, 181, 182,  183, 185, 186, and 188).  Listed next to the reference to bipolar disorder are more definitive diagnoses for other psychiatric disorders (ADHD, PTSD and Panic Disorder), but Dr. Freeland never writes the word "bipolar" without the "R/O" notation preceding it.   Therefore, Defendant argues that it was "reasonable" for the ALJ to

8

conclude that the notation was intended to convey that Dr. Freeland had ruled out the possibility of bipolar disorder, rather than that she continued to consider that diagnosis.

Examination of Dr. Freeland's records makes clear that whether Dr. Freeland intended to rule out the possibility of bipolar disorder, or whether she continued to suspect that diagnosis, is a close issue.  The patient intake notes from Plaintiff's first appointment with Dr. Freeland on 10/4/07 reflect that Plaintiff self-reported prior diagnoses of PTSD, ADHD, severe depression and panic disorder (Doc. 7-7 at 188), all of which diagnoses Dr. Freeland appears to have accepted, at least to some degree. Plaintiff apparently did *not* report her 2004 diagnosis of bipolar disorder to Dr. Freeland. Nevertheless, Dr. Freeland's intake notes reflect that Plaintiff presented with "rapid speech, very animated."  Plaintiff's speech and/or behavior were also described by Dr. Freeland as "pressured and overly excessive."  Based upon Dr. Freeland's initial observations, she concurred with Plaintiff's self-reported diagnoses of PTSD, Major Depression and Panic Disorder, but added and underscored the notation "R/O Bipolar." (Doc. 7-7 at 191).  Nowhere in the records is there any explanation of whether that diagnosis was ultimately eliminated from consideration.

In addition to the consistent notations in Plaintiff's clinical records, on January 12, 2010, Dr. Freeland completed a "mental status questionnaire" that reported Plaintiff's speech as "pressured, tangential, animated" and her mood as "anxious and labile." (Doc. 7-7 at 216).  Dr. Freeland stated that Plaintiff was "unable to work" due to her difficulty socializing with others and very severe anxiety.  (*Id.*).  Dr. Freeland further opined that Plaintiff "would have a lot of difficulty in a work setting due to panic attacks, poor concentration, and impaired social skills."  Dr. Freeland believed that Plaintiff's

9

concentration and memory were impaired, and again listed her diagnoses as "Panic Disorder, PTSD, ADHD, R/O Bipolar Disorder." She described Plaintiff as having difficulty with medications, rating her prognosis as "fair." (Doc. 7-7 at 216-217).

As with Plaintiff's back impairment, the Defendant contends that even if the ALJ erred in concluding that Plaintiff did not have bipolar disorder, the Commissioner's decision should be affirmed because the ALJ determined that Plaintiff's abilities were limited based upon other severe mental impairments. While perhaps a closer issue than Plaintiff's back impairment, there is sufficient evidence in the record to warrant remand for further evaluation of whether Plaintiff does in fact suffer from bipolar disorder, and if so, whether that disorder causes any limitations in excess of those previously determined. On remand, the ALJ may obtain additional evidence from Dr. Freeland or another qualified medical source if necessary to make that determination.

### 3. The ALJ's Evaluation of Plaintiff's Treating Psychotherapist

Dr. Freeland's opinions appear to be consistent with those of Plaintiff's treating psychotherapist, social worker Leslie H. Brody, LISW-S, LICDC. In fact, as her last asserted error, Plaintiff contends that the ALJ wrongly failed to grant sufficient weight to her therapist's opinions. On August 11, 2009, Ms. Brody wrote a letter stating that Plaintiff had been in mental health counseling with her agency for more than 2 years, since July 30, 2007, and that her "diagnoses include PTSD and Panic Disorder with a rule/out for Bipolar Disorder." Ms. Brody opined that Plaintiff's mental health issues "present a serious impairment...regarding her ability to interact with others and fulfill tasks" and that her "prognosis is guarded." (Doc. 7-7 at 194).

The ALJ's discussion of Ms. Brody's opinion is as follows:

> This opinion is not given by a qualified medical source for the purpose of entitling it to controlling or other preferential weight under the Regulations, but the opinion is considered and weighed in accordance with the criteria set forth in SSR 06-03p. Applying these criteria, I find that the opinion is not entitled to any significant weight, at least to the extent that it would support more mental functioning limitations [than] already set forth above. The claimant began treatment at the counseling service in question in 2007, but did not return from November 2007 until January 2009 according to the office records provided....There is little information provided in the limited treatment notes that would contradict the assessment given by the BDD examining psychologist or that would show deterioration in her overall mental functioning. The therapist appears to have relied solely on claimant's self-description of her symptoms. There is no evidence of any formal examination or report of significant signs of anxiety or depression. In fact, claimant seemed very upbeat and happy when seen on June 1, 2009....Most of her complaints...have related to problems in interacting with her parents. There is evidence of a lack of personal self-confidence...but nothing to suggest a degree of severity described in the brief letter from the therapist. Greater weight is therefore accorded the opinion of the BDD examining psychologist.

(Doc. 7-2 at 27).

Defendant argues that there is no error in the ALJ's analysis, because under relevant regulations a social worker is not an acceptable medical source. 20 C.F.R. §§404.1513(a) and (d), 415.913(a) and (d). Only an "acceptable medical source," generally a physician or psychologist, can be a treating source entitled to "controlling weight." *See* 20 C.F.R. §§404.1527(a)(2); 404.1527(d), 416.927(a)(2), 416.927(d).

SSR 06-03p, 2006 WL 2329939, provides that opinions from medical sources who are not "acceptable" medical sources should still be considered under the factors set forth in 20 C.F.R. §404.1527(d)(2), including "how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)(citations omitted).

11

On the whole, the ALJ appears to have complied with SSR 06-03p by referencing a significant gap in Plaintiff's treatment[1] and clinical notes that reflect arguable improvement - or at least maintenance of the status quo. *But see Potter v. Astrue*, 2011 WL 1480237 *2 (S.D. Ohio March 31, 2011)(disagreeing with ALJ's assessment of treatment notes, where nothing in notes "suggests that Plaintiff had responded so positively to medication and therapy that she could be expected to be able to sustain employment on a regular and continuing basis").

On the other hand, when considering the consistency of Ms. Brody's opinion with other evidence, the ALJ appears to have misconstrued the record.  The ALJ specifically noted that Ms. Brody's opinion was "the only opinion" claiming that claimant is disabled. That assessment ignores the opinion of treating psychiatrist Dr. Freeland that Plaintiff was "unable to work" due to her difficulty socializing with others and very severe anxiety.  (Doc. 7-7 at 216).  *See also Winning v. Commissioner of Social Sec.,* 661 F.Supp.2d 807, 819 -820 (N.D.Ohio, 2009)(holding that the ALJ should have provided more explanation of the weight given to licensed social worker's opinion, whose opinions were consistent with treating psychologist).  In light of this error and the need to remand on other issues relating to Plaintiff's alleged mental impairments, the ALJ will be directed to conduct a more complete assessment of Ms. Brody's opinion.

### III. Conclusion and Recommendation

Plaintiff advocates for outright reversal and an award of benefits, but moves in the alternative for remand.  I conclude that remand will provide appropriate relief on the record presented.

---

[1] The ALJ stated that Plaintiff left treatment in November 2007 and did not return until January 2009; the Court notes that one record, dated 12/18/08, was overlooked. (Doc. 7-7 at 202)

12

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ be instructed to carefully reconsider evidence of Plaintiff's back condition and mental impairments, including all relevant opinions from both acceptable treating sources and other medical sources;

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

           */s Stephanie K. Bowman*
           Stephanie K. Bowman
           United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

LEAH SIMPSON,　　　　　　　　　　　　　　　　Case No. 1:10-cv-610

　　　　Plaintiff,　　　　　　　　　　　　　　　　Barrett, J.
　　　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.
　　v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

　　　　Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).